## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  96-00443-CR-MARTINEZ

UNITED STATES OF AMERICA,

    v.

ISMAEL CAMACHO,

    Defendant.

_____/

### MR. CAMACHO'S REPLY TO GOVERNMENT'S RESPONSE TO HIS PSR OBJECTIONS AND MOTION FOR DOWNWARD VARIANCE

Mr. Camacho, through undersigned counsel, hereby replies to the government's response (DE 807) to his objections and motion for downward variance (DE 806), regarding the amended Presentence Report (PSR) and its addenda (DE 805)—and adds limited argument regarding resentencing, now that undersigned Mr. Camacho has had the benefit of reviewing the amended PSR with counsel:

I.    **Mr. Camacho maintains that his 18 U.S.C. § 924(c) conviction and sentence in count 11 is unconstitutional—and adds that his § 924(c) conviction in count 8 is *also* unconstitutional,  pursuant to the Fourth Circuit's recent opinion in *Taylor*, which held that attempted Hobbs Act robbery does not satisfy § 924(c)(3)(A).**

Mr. Camacho maintains, for the reasons outlined previously, that his 18 U.S.C. § 924(c) conviction and sentence in count 11 is unconstitutional. Further, Mr. Camacho contends that his § 924(c) conviction and sentence in count 8 is also unconstitutional, because it was predicated *solely* on attempted Hobbs Act robbery. *See In re: Ismael Camacho*, Case No. 19-14145 (11th Cir. Nov. 7, 2019) (granting in part authorization to file successive § 2255). Mr. Camacho previously requested

authorization to challenge his § 924(c) conviction and sentence in count 8, on this very basis, along with count 11 and his now-vacated § 924(c) convictions in counts 3 and 6. *See id*. However, the Eleventh Circuit denied Mr. Camacho's request for authorization to challenge his count 8 conviction and sentence, relying on Eleventh Circuit precedent holding that attempted Hobbs Act robbery *does* satisfy § 924(c)(3)(A). *Id*. (citing *United States v. St. Hubert*, 909 F.3d 335, 351–52 (11th Cir. 2018)). Therefore, Mr. Camacho was not authorized to raise this challenge in his 28 U.S.C. § 2255 motion to vacate. *Id*.

However, Mr. Camacho is pending a January 6, 2021 resentencing hearing on *all* remaining counts, including his § 924(c) conviction in count 8. And, on October 14, 2020, the Fourth Circuit disagreed with the Eleventh Circuit's decision in *St. Hubert*, by holding that attempted Hobbs Act robbery fails to satisfy § 924(c)(3)(A). *United States v. Taylor*, --F.3d--, No. 19-7616, 2020 WL 6053317, at *3 (4th Cir. Oct. 14, 2020). Meticulously applying the categorical approach, the Fourth Circuit in *Taylor* noted that the government can prove attempted Hobbs Act robbery by establishing that:

> (1) the defendant specifically intended to commit robbery by means of a threat to use physical force; and
> (2) the defendant took a substantial step corroborating that intent.

*Id*. However, '[t]he substantial step need not be violent." *Id*. Therefore:

> Where a defendant takes a nonviolent substantial step toward threatening to use physical force—conduct that undoubtedly satisfies the elements of attempted Hobbs Act robbery—the defendant has not used, attempted to use, or threatened to use physical force. Rather, the defendant has merely *attempted to threaten* to use physical force. The

2

plain text of § 924(c)(3)(A) does not cover such conduct.

*Id.* The *Taylor* court goes on to convincingly criticize the analysis underpinning the Eleventh Circuit's conclusion in *St. Hubert*, which the Fourth Circuit points out is *not* based on (mandatory) application of the categorical approach, but instead on "a rule of their own creation," that, "[w]hen a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony." *Taylor*, at *4 (citing *St. Hubert*, 909 F.3d at 351). But "this simply is not so," because, "certain crimes of violence—like Hobbs Act robbery, federal bank robbery, and carjacking—may be committed *without* the use or attempted use of physical force because they may be committed merely by means of threats." *Id.* For example:

> [a] person who attempts to commit Hobbs Act robbery by passing a threatening note to a store cashier has attempted the planned robbery without using or attempting to use physical force. He may case the store that he intends to rob, discuss plans with a coconspirator, and buy weapons to complete the job. But none of this conduct involves an attempt to use physical force, nor does it involve the use of physical force or the threatened use of physical force. In these circumstances, the defendant has merely taken nonviolent substantial steps toward threatening to use physical force. The plain text of § 924(c)(3)(A) does not embrace such activity.

*Id.* at *4. As the Fourth Circuit has now clearly explained, *St. Hubert* was wrongly decided, and Mr. Camacho's count 8 conviction and sentence, predicated solely on attempted Hobbs Act robbery, is also unconstitutional.

## II.    The government failed to rebut Mr. Camacho's position that Section 403 of the First Step Act applies at Mr. Camacho's resentencing.

The government disagrees with Mr. Camacho's argument—supported by a plurality of district courts, analogous Circuit precedent, and established sentencing

3

principles—that Section 403 of the First Step Act of 2018 applies at his 2021 resentencing, thereby reducing the minimum mandatory sentence for count 11 to 5— not 20—years' imprisonment.

Aside from the *dissenting* opinion from the Seventh Circuit's opinion in *United States v. Uriarte*, 975 F.3d 596 (7th Cir. 2020), the government relies heavily on an easily distinguishable opinion from the Third Circuit, *United States v. Hodge*, 948 F.3d 160 (3rd Cir. 2020). The *majority* decision in *Uriarte* explains why *Hodge* does not answer the question before this Court (or the narrower question before the Court in *Uriarte*):

> We also could pay the words of the statute a great deal extra by departing completely from the text and invoking our own policy preferences. In *United States v. Hodge*, the Third Circuit, after deciding that the defendant had not been granted a full resentencing, wrote in pure *dicta* that "drawing the line at initial-sentence imposition is preferable to drawing the line at ultimate-sentence imposition. If we let all defendants awaiting resentencing capitalize on the First Step Act, we would favor defendants whose appeals—for whatever reason—took longer to resolve." 948 F.3d 160, 164 (3d Cir. 2020).

> Preferable? To whom? Neither the Third Circuit nor the Seventh Circuit has the prerogative of policy choice in this matter. As the Supreme Court noted in *Dorsey* . . . *any* reduction of criminal penalties will involve difficult line drawing with respect to pending cases. Here, Congress, attempting to cure what it saw as an inappropriate sentencing structure, determined that its revision should control any situation where a district court still had to impose a sentence. Considering that Congress had determined that the earlier sentencing structure resulted in sentences that were too long and unfair, it is difficult to fault Congress for ensuring that those sentences would not be imposed on defendants yet to be sentenced. It wanted the unfair practice stopped upon enactment. Period.

975 F.3d 596, 603. A look back at *Hodge* confirms that the defendant in *Hodge*— unlike Mr. Camacho—was awarded a resentencing based on a *limited remand* from

the Court of Appeals, *and* that the Third Circuit, "express[ed] no opinion as to whether § 403 applies to a defendant whose sentence on § 924(c) counts is vacated and remanded for resentencing after the Act's enactment." *Hodge*, 948 F.3d at 163 n.4.

Thankfully, courts no longer have to guess what the bipartisan group of legislators who wrote the First Step Act intended, because have filed an *amici* brief in the Ninth Circuit, explaining that: "Congress intended for Section 401 to apply to pre-Act offenders who are not subject to a sentence for their offenses, including those individuals whose original sentences are vacated as unlawful for other reasons." Brief of Senators Richard J. Durbin, Charles E. Grassly, and Corey A. Booker, as *Amici Curiae* in Support of Defendant-Appellant Mapuatuli and Vacatur. *United States of America v. Alan L. Mapuatuli,* Case No. 19-10233 (9th Cir.). Section 401(c)'s language regarding applicability to completed offenses is identical to Section 403(b)'s language. *See* First Step Act, §§ 401(c), 403(b). Therefore, *Hodge*'s "pure dicta" regarding where the Section 403 line should be drawn is wrong, and Congress clearly intended for people like Mr. Camacho to receive the benefit of the First Step Act at their resentencing hearings.

Neither does *any* decision holding that either Sections 401 or 403 of the First Step Act do not apply on direct appeal inform the decision before this Court, because Mr. Camacho is pending a resentencing hearing—where, unlike an appellate court, this Court will pronounce and impose a new sentence for each offense. The Second Circuit recognized this distinction by suggesting that Section 403 *might* apply at a

5

resentencing hearing—even as it held that it did *not* apply on direct appeal. *United States v. Brown,* 935 F.3d 43, 46 n.1 (2d Cir. 2019) ("The new provision applies only 'going forward,' and therefore provides no benefit to Brown in the pending appeal at this point. However, at the resentencing, which will occur as a result of our remand, Brown will have the opportunity to argue that he is nevertheless entitled to benefit from section 403(b)…"). And, the 11th Circuit cited to that Second Circuit opinion favorably in *United States v. Smith*. 967 F.3d 1196, 1213 (11th Cir. 2020) (agreeing also that a sentence is "imposed" for purpose of Sec. 403 when it is pronounced by the district court, so Sec. 403 does not apply to cases *pending* direct appeal).

Not only is the government's authority inapposite, but, as the government concedes, because Mr. Camacho's vacated § 924(c) sentences directly impact the statutory range for his remaining § 924(c) convictions, the sentencing package doctrine applies. (DE 807: 7). This doctrine allows the Court to thoroughly revisit *all* of Mr. Camacho's remaining sentences. *Id*. (quoting *United States v. Fowler*, 749 F.3d 1010, 1015-16 (11th Cir. 2014) ("The thinking is that when a conviction on one or more of the component counts is vacated for good, the district court should be free to reconstruct the sentencing package . . . to ensure that the overall sentence remains consistent with the guidelines, the § 3553(a) factors, and the court's view concerning the proper sentence in light of all the circumstances.")). The § 3553(a) factors include post-sentencing rehabilitation, *Pepper v. United States*, 562 U.S. 476, 490 (2011), and of course, the statutory minimums and maximums. *See* 18 U.S.C. § 3553(a)(3) (directing that courts consider the kinds of sentences available); *United States v.*

*Currie*, 739 F.3d 960, 966 (7th Cir. 2014) ("Statutory minima and maxima have an obvious anchoring effect on the judge's determination of a reasonable sentence."); *United States v. Simons*, 375 F. Supp. 3d 379, 387 (E.D.N.Y. 2019) (stating "[s]tatutory penalty ranges serve as an anchor for a district court alongside its review of the Guidelines and the statutory factors" and citing *Currie*).

The statutory minimums applicable to § 924(c) offenses were modified by the First Step Act of 2018; asking the Court to ignore this statutory change when it imposes a new sentence for Mr. Camacho, in 2021, invites the Court to re-impose an old and "inappropriate sentencing structure" that Congress has explicitly rejected because it resulted in sentences that were "too long and unfair." *See Uriarte*, 975 F.3d at 603. This Court should, instead, join the only other Court in this District (and many courts outside of it)  to have interpreted the same First Step Act language, at a resentencing hearing, upon granting a § 2255, and apply § 403 to Mr. Camacho's § 924(c) remaining sentences. (DE 806: 5-6) (discussing *United States v. Beneby*, 13-cr-20577-MGC, DE 174 (S.D. Fla. Sept. 27, 2019), *appeal pending*, No. 19-13397 (11th Cir.), among other analogous District Court opinions)).

**III.  Mr. Camacho's rapid COVID-19 test may have been a false positive, but his risk of serious complications from contracting (or re-contracting) COVID-19 remains high as long as he remains incarcerated, and his still real COVID-19 risk—heightened further by his uncontrolled high blood pressure—weighs in favor of a downward variance.**

When undersigned counsel filed Mr. Camacho's objections on September 30, 2020, Mr. Camacho was held in a COVID-19 quarantine unit—without access to legal

7

calls—because he had tested positive for COVID-19 (DE 806: 1 n.1).[1] Undersigned counsel was therefore unable to directly assess Mr. Camacho's health (or discuss the amended PSR). However, undersigned counsel was subsequently able to obtain Mr. Camacho's medical records, and on October 15 and October 28, 2020, to speak with Mr. Camacho.

Mr. Camacho reports that he is out of COVID-19 quarantine, back at Coleman Medium,[2] and he believes that his rapid COVID-test produced a "false positive." Rapid COVID-19 tests are, in fact, less reliable; for example, "[i]n Nevada, public-health authorities have told nursing homes to stop using two models of [rapid] antigen-test machines, which the federal government has sent to more than 14,000 facilities, *after only 16 of 39 positive tests were confirmed* by subsequent PCR testing."[3] Mr. Camacho adds that his cellmate received the same test, and the result was negative. Further, Mr. Camacho—who has *several* underlying medical conditions which make him particularly vulnerable to COVID-19 complications—had *no* COVID-19 symptoms at any time during his lengthy quarantine.

Therefore, it is possible (if not likely) that Mr. Camacho has not yet contracted

---

[1] Exhibit 1 (BOP medical record reflecting rapid test result).

[2] According to a case manager at the Coleman Complex, for reasons that remain unclear, Mr. Camacho was transferred from Coleman Medium to USP Coleman II on September 17, 2020, and returned to Coleman Medium on September 29, 2020.

[3] Alexis Madrigal & Robinson Meyer, "Why Trump's Rapid-Testing Plan Worries Scientists," The Atlantic, October 9, 2020, available at https://www.theatlantic.com/health/archive/2020/10/do-rapid-antigen-tests-have-accuracy-problem/616681/ (discussing support and criticism of rapid testing).

COVID-19. Either way, for the reasons already outlined (DE 806: 11-15), Mr. Camacho's multiple medical conditions place him at a serious risk of COVID-19 complications, including death. This risk is increased by the unfortunate fact that Mr. Camacho's high blood pressure has been uncontrolled for months, because, apparently, the BOP stopped giving him his blood pressure medication.[4] Mr. Camacho's still very real risk of contracting COVID-19, and suffering complications, is just one of several factors which support Mr. Camacho's motion for a downward variance.

> Respectfully Submitted,
>
> MICHAEL CARUSO
> FEDERAL PUBLIC DEFENDER
>
> By: _s/ Sara W. Kane_
> Sara W. Kane
> Assistant Federal Public Defender
> Florida Bar No. 98616
> 150 W. Flagler Street, Suite 1700
> Miami, Florida 33130
> Tel: 305-530-7000
> E-Mail Address: sara_kane@fd.org

---

[4] Exhibit 1.

**CERTIFICATE OF SERVICE**

I HEREBY certify that on **October 28, 2020**, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record via transmission of Notices

of Electronic Filing generated by CM/ECF or in some other authorized manner for

those counsel or parties who are not authorized to receive electronically Notices of

Electronic Filing.

_s/ Sara W. Kane_

10